UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,
a Connecticut corporation,

        Plaintiff,

    v.

SIDNEY B. DUNMORE, an
individual; SID DUNMORE
TRUST DATED FEBRUARY 28,
2003, a California trust;
SIDNEY B. DUNMORE, Trustee
for Sid Dunmore Trust Dated
February 28, 2003; DHI
DEVELOPMENT, a California
corporation,

        Defendants.
_____/

NO. CIV. S-07-2493 LKK/DAD

O R D E R

    Defendants in this suit are various persons and entities connected with the Dunmore home construction business. In the course of this business, bonds were issued to ensure lien-free completion of construction projects. Plaintiff Travelers Casualty and Surety Company of America ("Travelers") guaranteed these bonds, and all presently named defendants agreed to indemnify Travelers.

1

Travelers filed the instant suit in order to enforce these indemnity agreements.

Pending before the court are two matters. In the first, Travelers seeks to amend the scheduling order to permit additional discovery on claims against the Dunmore defendants. In the second, Travelers moves to amend the complaint to name additional indemnitors, namely William Niemi, Beth Niemi, and a trust established by the two. Defendant Sidney B. Dunmore, appearing in his individual capacity, opposes both matters. No other opposition has been filed.

The court resolves the matters on the papers and after oral argument. For the reasons stated below, both the motion to amend and the application to modify the scheduling order are granted.

## I. BACKGROUND

**A.   Overview of Construction Bonds**

Plaintiff's complaint names four related defendants. The first is Sidney B. Dunmore, named as an individual. The second is also Sidney B. Dunmore, but named in his capacity as the trustee for the "Sid Dunmore Trust dated February 28, 2003." The third defendant is this trust itself. Fourth and finally is DHI Development.

DHI Development (hereinafter "DHI")[1] formerly engaged in

---

[1] "Dunmore Homes, Inc." is a separate entity from "DHI Development." Throughout this litigation the plaintiffs have referred to the latter, rather than the former, as "DHI." It appears that the court may have confused these two in its prior order. It further appears, however, that any such confusion was immaterial.

2

construction and subdivision improvements. DHI worked either on its own or through subsidiaries and affiliated entities. For example, evidence submitted in connection with Travelers' prior motion for summary judgment refers to projects undertaken by "Dunmore Croftwood," "Dunmore Montecito," and "Dunmore Diamond Ridge," each of which is a separate entity. In connection with this work DHI and related entities entered into contracts or subdivision agreements with clients. Following what the court takes to be industry practice, these construction contracts and subdivision agreements incorporated payment bonds and performance bonds. A payment bond guarantees that a subcontractor will be paid in event of the general contractor's default. Black's Law Dictionary, Eighth Edition, 189 (quoting Grant S. Nelson, Real Estate Finance Law § 12.2, at 881 (3d ed. 1994)). A "performance bond" protects the general contractor's clients. Under a performance bond, the guarantor promises that if the contractor defaults, the guarantor will pay an alternate developer to take over the project. Id. Both types of bonds are contracts between the general contractor (here, DHI or the subsidiary), the guarantor[2] (here, Travelers), and either the client or the subcontractor, as appropriate. Both bonds are often incorporated into the same instrument, providing for payment or performance as necessary as to the same project.

---

[2] Pursuant to California Civil Code section 2787, California law does not distinguish between sureties and guarantors. The court therefore uses these and derivative terms interchangeably.

3

**B.  Bonds and Indemnification Agreements Underlying The Operative Complaint**

The operative complaint seeks to enforce a general indemnity agreement adopted by the Dunmore defendants on December 15, 2005. Travelers agreed to guarantee future DHI bonds and the Dunmore defendants agreed to indemnify Travelers for loss and expense incurred in connection with these guarantees.

After the indemnity agreement was consummated, Travelers guaranteed at least eighty-four bonds issued by DHI in connection with contracts and subdivision agreements.  DHI subsequently went bankrupt, and has defaulted on numerous such bonds.  As a result, certain obligees (i.e., persons or entities whom DHI and Travelers owed a duty under the bonds) have made claims against these bonds. Travelers has paid sixty-five of these claims, and a remaining nineteen claims are pending.

**C.  Niemi Indemnification Agreements**

Travelers seeks to amend the complaint to add as defendants William M. and Beth H. Niemi (both individuals) and the William & Beth Niemi 1985 Revocable Family Trust.  For convenience, the court refers to these three as the Niemi defendants, but the court recognizes that these entities are not yet parties to this suit.

The Niemi defendants, together with the Dunmore defendants, entered two indemnification agreements which preceded the 2005 agreement at issue above.  Around June 6, 2000, Reliance Insurance Company (not a party to this suit) agreed to guarantee bonds to be issued by Dunmore Homes, LLC.  In connection with this guarantee,

4

the Niemi defendants (together with the remaining Dunmore defendants) agreed to indemnify Reliance for all losses or expenses incurred in connection with these bonds. Decl. of Sam. E. Barker, Ex. 1. Travelers asserts that at some point thereafter, but prior to September 20, 2004, Travelers acquired Reliance's interests under this first agreement. Barker Decl. ¶ 16. On September 20, 2004, the Niemi defendants entered a second indemnity agreement, this time with Travelers, agreeing to indemnify Travelers in connection with bonds issued on behalf of the Dunmore parties. Barker Decl. Ex. 2.

DHI issued various bonds in 2003 and 2004 that were subject to these guarantee and indemnification agreements. Travelers contends that DHI has defaulted on at least seven of these bonds, such that Travelers incurred obligations under the guarantees. As a result of these defaults, Travelers paid a claim to the City of Merced in April 2009 and claims to Teichert Construction in December 2009. In addition, Yuba City has three outstanding claims on 2003 and 2004 bonds. Although Travelers alleges that it began *paying* these claims only recently, Travelers has not indicated when the claims where *made* or when it became aware of possible exposure on these bonds.[3]

Effective April 25, 2005, the Niemi defendants severed their

---

[3] Travelers' declarant states "After a period of resolving claims through negotiation and litigation, it recently became apparent to Travelers that there were bonds issued in 2003 and 2004 for Dunmore Homes and its subsidiaries on which claims had been paid, and with pending claims." Barker Decl. ¶ 30.

5

indemnity obligations for all future bonds pursuant to a severance provision contained in the 2000 and 2004 agreements. Travelers contends that despite this severance, the Niemi defendants continue to be obliged to indemnify Travelers for bonds issued between June 2000 and April 2005, including the claims discussed in the previous paragraph.

**D.   Dunmore Defendants' Indemnification of the Niemi Defendants**

The Dunmore defendants apparently agreed to indemnify the Niemi defendants (who, the court reiterates, are not yet defendants) for all losses the Niemis incurred in connection with the 2000 and 2004 indemnification agreements. Travelers asserts that is has been informed of, but has not seen, this agreement. Skid Dunmore asserts that it exists, but has not provided a copy.

**E.   Procedural History**

Travelers filed suit against the Dunmore defendants on November 19, 2007. The operative complaint alleges that the Dunmore defendants have breached the indemnity agreement by failing to indemnify Travelers for claims Travelers has already paid and failing to provide Travelers with funds sufficient to pay anticipated claims as required by the agreement. Travelers also seeks specific performance as to the latter provision. In an order filed December 13, 2007, the court granted Travelers' application for a writ attaching $7.8 million worth of Dunmores' property. See also Order filed Jan. 7, 2008.

The court entered a scheduling order on February 12, 2008. This order provided that "No further joinder of parties or

amendments to pleadings is permitted except with leave of court, good cause having been shown." Id. at 2 (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992)). The order also provided that all discovery would be completed by March 30, 2009.

The court modified this scheduling order once. On December 11, 2008, the court vacated all dates pursuant to the parties' stipulation. One ground for this stipulation was that two bankruptcy proceedings involving Dunmore entities, including an injunction issued by one of the bankruptcy courts, hampered discovery and prevented Travelers from resolving some of the bond claims underlying this litigation. Pursuant to this stipulation, the court held a status conference, and issued a new scheduling order on March 2, 2009. Due to a clerical error, several dates in this order were transposed. The court later clarified that pursuant to this order, discovery was to be completed by September 30, 2010. See Order filed June 5, 2009.

Travelers moved for summary judgment on May 1, 2009. The court denied this motion, in part under Fed. R. Civ. P. 56(f) on the ground that outstanding discovery precluded determination of Travelers' claims. Order filed June 5, 2009.

Travelers filed the instant motion to amend the complaint on May 13, 2010, noticing this motion for hearing for June 21. On June 1, Travelers separately filed an "application for modification of status order" seeking, under Fed. R. Civ. P. 16, to modify the current discovery deadline on the ground that additional discovery is necessary for claims included in the operative complaint.

7

Defendant Sidney B. Dunmore opposes both, and requests that the two be heard together.  No other defendant has filed an opposition, nor have the Niemi parties stated an appearance or communicated with the court.

## II. STANDARDS

**A.  Standard for Modification of a Scheduling Order under Fed. R. Civ. P. 16**

Once a scheduling order is issued, the schedule may only be modified "for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment.  <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609-10 (9th Cir. 1992).

> [T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, <u>see</u> [<u>In re San Juan DuPont Plaza Hotel Fire Litig.</u>, 111 F.3d 220, 228 (1st Cir. 1997)]; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, <u>see Johnson</u>, 975 F.2d at 609; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order, <u>see</u> [<u>Eckert Cold Storage v. Behl</u>, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996)].

<u>Jackson v. Laureate, Inc.</u>, 186 F.R.D. 605, 608 (E.D. Cal. 1999); <u>see also</u> 6A, Wright, Miller & Kane, Fed. Prac. & Proc. Civ.2d § 1522.1 ("good cause" means scheduling deadlines cannot be met

despite party's diligence).

**B.     Standard for Amendment Pursuant to Fed. R. Civ. P. 15(a)**

The Federal Rules provide that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "The decision of whether to grant leave to amend [lies] within the discretion of the district court." Leadsinger, Inc. v. BMG Music Publishing, 512 F.3d 522, 532 (9th Cir. 2008). Among the factors which can support denial of leave to amend are

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.

Id. (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)) (modification in original), Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1035 (9th Cir. 2008). The party opposing amendment bears the burden of showing that these factors are present. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987).

Prejudice to the opposing party is the most important of these factors. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam), Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971)).

While delay alone is insufficient to deny amendment, undue delay is a factor to be considered. See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming

9

district court's denial of motion for leave to amend to add new claims made two years into litigation). Pertinent to consideration of this factor is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading. See Jackson, 902 F.2d at 1388 (citing E.E.O.C. v. Boeing Co., 843 F.2d 1213, 1222 (9th Cir. 1988)).

Although futility may also be a ground for denial of leave to amend, defendants do not assert that amendment would be futile here.

**C.   Standard for Adding Parties under Fed. R. Civ. P. 20**

Fed. R. Civ. P. 20(a)(2) permits permissive joinder of defendants where a "right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."

Here, Travelers asserts a right to relief--indemnification-- against both the Niemi and Dunmore parties, and the transactions supporting claims against the Niemi parties also support claims against the Dunmores. Therefore, the requirements particular to Fed. R. Civ. P. 20 have been satisfied--a conclusion that no party disputes here. To the extent that permissive joinder also requires consideration of prejudice, delay, etc., consideration of those factors is subsumed into the Rule 15 analysis. Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371, 1375-76 (9th Cir. 1980).

////

### III. ANALYSIS

**A.   Extension of Discovery**

    **1.   Discovery Deadline**

Travelers seeks a 270 day extension for all dates on the ground that the question of Travelers' liability as guarantor on many bond claims remains unresolved. This court previously denied Travelers' motion for summary judgment in part on the grounds Travelers had not established the amount of its future liability or the legitimacy of all claims which it had paid. Order filed June 5, 2009 at 24-25, 27-28.

At oral argument, the court noted that although the above demonstrates that some extension is necessary, the court was not convinced that nine months is warranted. The court then noted its intent to permit defendant leave to file a supplemental brief related to the question of how far existing dates should be continued. Given that new parties will be joined, it appears that a further status conference will be necessary. At that conference, the court will consider that matter of new dates.

    **2.   Number of Discovery Requests**

Separate from the request to extend the dates provided by the scheduling order, Travelers seeks to expand the amount of discovery. Specifically, Travelers seeks to expand the limits to 100 requests for production, 100 interrogatories, 100 requests for admission, open number of interrogatories relating to denials of requests for admission, and an open number of requests for admission regarding authenticity of documents.

Once again, the matter will be considered at a future status conference.

**B.    Amendment of the Complaint**

    **1.    Good Cause under Rule 16**

At all relevant times, Travelers was aware of the Niemi defendants' indemnity agreements. Travelers was also aware of all bonds on which Travelers was the surety, and therefore, of all bonds potentially subject to these indemnification agreements. Finally, it appears that when Dunmore Homes "shut down," in Travelers' words, in August 2007, Dunmore Homes ceased meeting *all* of its bonded obligations. Travelers thus should have predicted at that time that it would face liability on all outstanding obligations.

Accordingly, the court is puzzled by Travelers' statement that "*Since* Dunmore Homes appeared to be meeting its obligations until a few months prior to its 'shut down' in early August 2007, it appeared that all claims against Travelers' bonds were arising from the bonds issued after April 25, 2005." Travelers' Mem., 11 (emphasis added). Simply put, it is unclear why the second half of that statement follows from the first. If a bond issued prior to April 25, 2005 applied to a project that had not been completed by August 2007, then there would be outstanding obligations on that bond notwithstanding the fact that Dunmore Homes had, up to that time, done its duty. It appears that this is what happened here, and Travelers has provided no indication as why Travelers was unaware of this situation at the time the complaint was filed.

The fact that Travelers did not pay any claims on these bonds until 2009 did not preclude Travelers from bringing these claims earlier. The indemnity agreements provide a right to seek funds for *possible, future* liability on bond claims, and Travelers continues to seek to enforce these provisions.

Finally, even if Travelers could not or should not have amended until Travelers had *paid* one of these bond claims, the instant motion would be one year late. Travelers paid the first claim on a bond indemnified by the Niemi indemnitors in April 2009, but the instant motion was filed in May 2010.

When confronted with this issue, Travelers' reply brief acknowledges that "the documents and information giving rise to a claim for indemnity against the Niemi Indemnitors was available to Travelers prior to the March 30, 2009 Scheduling Conference." Reply at 5.

In light of these facts and this concession, the court is hard pressed to find good cause to modify the scheduling order so as to permit an amendment here. The core of the Rule 16 good cause inquiry is the diligence of the moving party. Johnson, 975 F.2d at 609. "'Good cause' means scheduling deadlines *cannot be met* despite [the] party's diligence." Id. (quoting 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 (2d ed. 1990) (emphasis added). The pretrial schedule may be modified "'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Id. (quoting Fed. R. Civ. P. 16 Advisory Committee's Notes (1983 Amendment)).

13

1    Nonetheless, the practical realities of this case persuade the
2 court that untimely amendment is the lesser of two evils.  It
3 appears that if the court were to deny the instant motion,
4 Travelers would be free to file a separate suit against the Niemi
5 indemnitors.  That suit would then be related to this one, and
6 likely consolidated.  Thus, denying the instant motion would
7 produce the same result while imposing a greater burden on the
8 court.  To avoid this burden, and because (as explained below)
9 amendment does not prejudice defendants, the court grants the
10 motion.

11   **2.   Whether Amendment Is Warranted under Rule 15(a)**

12    Whereas Rule 16 focuses on diligence of the moving party, Rule
13 15 focuses on harm to the non-moving party.  No such harm has been
14 shown here.

15    Most importantly, defendant Sidney Dunmore (the only party
16 opposing amendment) has not shown prejudice.  To recap, Dunmore
17 Homes contracted to build various projects.  Travelers answers for
18 Dunmore Homes by guaranteeing bonds issued in connection with these
19 projects.  The Niemi defendants agreed to indemnify Travelers in
20 connection with these projects.  The Dunmore defendants in turn
21 agreed to indemnify the Niemi defendants.  Sidney Dunmore argues
22 that permitting Travelers to amend the complaint prejudices him
23 because it will expose him to liability to the Niemis.  Dunmore
24 faces this liability regardless of whether the instant motion is
25 granted, because Travelers is free to bring its claim against the
26 Niemis in another action.  Prejudice under Rule 15 concerns harm

attributable to the fact that a claim is asserted *via amendment*, rather than harm attributable to the fact that the claim is asserted at all. <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946, 953 (9th Cir. 2006), <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990). Although late amendment may cause prejudice where it compels parties to hurry in discovery, in this case, an independent basis warrants continuing the discovery cutoff and trial date, so there is no showing of this type of prejudice.

Turning to the other factors, nothing in this case indicates that Travelers' late request for an amendment is the result of bad faith or that the proposed amendment would be futile. Although Travelers' delay is unjustified and thus undue, undue delay is not itself a basis for denying leave to amend under Rule 15. <u>Morongo Band of Mission Indians</u>, 893 F.2d at 1079.

## IV. CONCLUSION

For the reasons stated above, Travelers' motion to amend the complaint (Dkt. No. 130) is GRANTED. Travelers' application to modify the scheduling order (Dkt. No. 136) is GRANTED.

IT IS SO ORDERED.

DATED: June 22, 2010.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

15