UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,
a Connecticut corporation,

                                        NO. CIV. S-07-2493 LKK/DAD

          Plaintiff,

     v.
                                              O R D E R
SIDNEY B. DUNMORE, an
individual; SID DUNMORE
TRUST DATED FEBRUARY 28,
2003, a California trust;
SIDNEY B. DUNMORE, Trustee
for Sid Dunmore Trust Dated
February 28, 2003; DHI
DEVELOPMENT, a California
corporation,

          Defendants.

_____/

     Defendant Sidney B. Dunmore ("Dunmore") was engaged in home

construction. The remaining defendants are trusts and business

entities associated with Dunmore. These defendants entered into an

agreement with Travelers Casualty and Surety Company of America

("plaintiff" or "counter-defendant") wherein Travelers agreed to

guaranty performance bonds issued by defendants pursuant to several

1

construction contracts, subject to defendants' promise to indemnify plaintiff with respect to these guaranties. Plaintiff subsequently filed suit bringing claims arising out of this indemnity agreement. Dunmore filed a counterclaim, asserting a breach of the implied covenant of good faith and fair dealing and seeking an offset.

Presently before the court is plaintiff's motion to dismiss Dunmore's prayer for punitive damages, plaintiff's motion to strike Dunmore's first amended counterclaim, and, in the alternative, plaintiff's motion for a more definite statement regarding Dunmore's prayer for relief. For the reasons stated below, plaintiff's motion to dismiss is granted, plaintiff's motion to strike is denied, and plaintiff's motion for a more definite statement is granted.

## I. BACKGROUND

### A.    Plaintiff's Claims

The current litigation deals with defendants' alleged failure to indemnify plaintiff pursuant to various indemnity agreements. Dunmore, among other defendants, entered into these indemnity agreements with plaintiff.[1] FAC at ¶¶ 17-25, Exhibits 1, 2, and 3 to FAC. Under these agreements, Dunmore promised to indemnify plaintiff from all losses, including attorneys' and other professional fees, which plaintiff incurred in connection with the indemnity agreements or any construction performance bonds related

---

[1] There are three indemnity agreements referenced in the complaint: June 6, 2000 Indemnity Agreement (Exhibit 1); September 20, 2004 Indemnity Agreement (Exhibit 2); and December 15, 2005 Indemnity Agreement (Exhibit 3).

to the agreements. FAC at ¶¶ 17-23, Exhibits 1, 2, and 3 to FAC.

Dunmore subsequently entered into several construction contracts that required him to furnish the respective project owners with certain bonds. FAC at ¶ 24. Plaintiff, as surety, issued bonds on behalf of defendant entities on numerous construction contracts for various projects. FAC at ¶ 25. Certain obligees and claimants have now alleged that Dunmore defaulted on certain performance and payment obligations under those contracts and bonds. FAC at ¶ 29.

Plaintiff claims that as a result of the alleged defaults it has incurred significant losses for investigating, defending, and/or paying claims against the bonds. FAC at ¶ 30. Plaintiff anticipates additional losses for claims that have been made and for claims that have yet to be made.[2] FAC at ¶ 31.

On October 30, 2007, plaintiffs sent a written demand to Dunmore for defense, indemnity, collateral, and books and records, pursuant to the indemnity agreements. FAC at ¶ 33, Exhibit 5 of FAC. Plaintiff alleges that after this written request was made, Dunmore failed, and continues to fail, to indemnify plaintiff from and against all losses. FAC at ¶ 37. Plaintiff filed suit for breach of contract on November 19, 2007, based on the alleged failure of defendants to perform under the indemnity agreements.

---

[2] Plaintiffs state that they are unsure at this point as to the exact amount of losses they have suffered, and when that amount becomes known, they will seek leave of this court to amend their complaint to include a claim for damages in that amount. FAC at ¶ 32.

On May 13, 2010, plaintiff moved to amend its complaint, which was subsequently granted on June 23, 2010. Plaintiff filed its first amended complaint on July 14, 2010.

**B.   Dunmore's Counterclaim**

Dunmore filed his first amended answer along with a first amended counterclaim for offset and breach of the implied covenant of good faith and fair dealing on October 25, 2010. "The General Agreement of Indemnity Limited Liability and Net Worth Rider" (Doc. 148-2 at 50) provides that if the operating entity's tangible net worth falls below $25 million, the limited liability exposure agreement would not apply.[3] Dunmore's First Amended Counterclaim ("ACC") at ¶ 3. Dunmore claims that the intent of the parties in executing this "rider" was to limit Dunmore's personal liability so that Dunmore would continue to use plaintiff's services. ACC at ¶ 4.

Plaintiffs also had a duty to minimize costs, expenses, and pay-outs on claims made against the performance bonds. ACC at ¶ 189. Plaintiffs allegedly breached this duty by "a) [incurring] litigation costs which it should not have incurred, b) paying claims which exceeded its contractual obligation and more than what it was legally entitled [sic] to, c) failing to properly assert rights to offsets for claims made, d) paying claims which it was not obligated to pay, and other breaches which counterdefendant attempts to collect from Counterclaimant." ACC at ¶ 190.

---

[3] The operating entity in this case is Dunmore Homes New York, or "DHNY."

4

1    Plaintiff was allegedly put "on actual and constructive
2   notice" of claims that were either totally or partially without
3   merit prior to making pay-outs. ACC at ¶¶ 5-6. Plaintiff is now
4   trying to exact those payments from [Dunmore] and therefore has
5   acted with "fraud, malice, and intent to harm." ACC at ¶ 191.
6   Dunmore seeks punitive damages, special and actual damages
7   "according to proof", injunctive relief including, but not limited
8   to, disgorgement of funds, consequential damages, including offset
9   and business disruption, and attorney fees as well as a jury trial.
10  ACC at ¶¶ 192, 194.

**II. STANDARDS**

**A.   Motion To Dismiss**

13   A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's
14  compliance with the pleading requirements provided by the Federal
15  Rules.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading
16  must contain a "short and plain statement of the claim showing that
17  the pleader is entitled to relief."  The complaint must give
18  defendant "fair notice of what the claim is and the grounds upon
19  which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555
20  (2007) (internal quotation and modification omitted).

21   To meet this requirement, the complaint must be supported by
22  factual allegations. Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.
23  Ct. 1937, 1950 (2009). "While legal conclusions can provide the
24  framework of a complaint," neither legal conclusions nor conclusory
25  statements are themselves sufficient, and such statements are not
26  entitled to a presumption of truth. Id. at 1949-50. Iqbal and

1  <u>Twombly</u> therefore prescribe a two step process for evaluation of

2  motions to dismiss.  The court first identifies the non-conclusory

3  factual allegations, and the court then determines whether these

4  allegations, taken as true and construed in the light most

5  favorable to the plaintiff, "plausibly give rise to an entitlement

6  to relief."  <u>Id.</u>; <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).

7      "Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not

8  refer to the likelihood that a pleader will succeed in proving the

9  allegations.  Instead, it refers to whether the non-conclusory

10 factual allegations, when assumed to be true, "allow[] the court

11 to draw the reasonable inference that the defendant is liable for

12 the misconduct alleged."  <u>Iqbal</u>, 129 S.Ct. at 1949. "The

13 plausibility standard is not akin to a 'probability requirement,'

14 but it asks for more than a sheer possibility that a defendant has

15 acted unlawfully."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  A

16 complaint may fail to show a right to relief either by lacking a

17 cognizable legal theory or by lacking sufficient facts alleged

18 under a cognizable legal theory. <u>Balistreri v. Pacifica Police</u>

19 <u>Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

20     **B.   Motion To Strike**

21     Rule 12(f) authorizes the court to order stricken from any

22 pleading "any redundant, immaterial, impertinent, or scandalous

23 matter." A party may bring on a motion to strike within 21 days

24 after the filing of the pleading under attack. The court, however,

25 may make appropriate orders to strike under the rule at any time

26 on its own initiative. Thus, the court may consider and grant an

untimely motion to strike where it seems proper to do so. See 5A

Wright and Miller, Federal Practice and Procedure: Civil 2d 1380.

A matter is immaterial if it "has no essential or important

relationship to the claim for relief or the defenses being

pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir.

1993), rev'd on other grounds by 510 U.S. 517 (1994). A matter is

impertinent if it consists of statements that do not pertain to and

are not necessary to the issues in question. Id. Redundant matter

is defined as allegations that "constitute a needless repetition

of other averments or are foreign to the issue." Thornton v.

Solutionone Cleaning Concepts, Inc., No. 06-1455, 2007 WL 210586

(E.D. Cal. Jan. 26, 2007), citing Wilkerson v. Butler, 229 F.R.D.

166, 170 (E.D. Cal. 2005).

Motions to strike are generally viewed with disfavor, and will

usually be denied unless the allegations in the pleading have no

possible relation to the controversy, and may cause prejudice to

one of the parties. See 5A C. Wright & A. Miller, Federal Practice

and Procedure: Civil 2d 1380; see also Hanna v. Lane, 610 F. Supp.

32, 34 (N.D. Ill. 1985). However, granting a motion to strike may

be proper if it will make trial less complicated or eliminate

serious risks of prejudice to the moving party, delay, or confusion

of the issues. Fantasy, 984 F.2d at 1527-28.

If the court is in doubt as to whether the challenged matter

may raise an issue of fact or law, the motion to strike should be

denied, leaving an assessment of the sufficiency of the allegations

for adjudication on the merits. See Whittlestone, Inc. v.

1  Handi-Craft Co., 618 F.3d 970 (9th Cir. 2010); see also 5A Wright

2  & Miller, supra, at 1380. Whittlestone emphasized the distinction

3  between Rule 12(f) and Rule 12(b)(6) and held that Rule 12(f) does

4  not authorize district courts to strike claims for damages on the

5  ground that such claims are precluded as a matter of law. Id. at

6  976.

7        "Were we to read Rule 12(f) in a manner that allowed
         litigants to use it as a means to dismiss some or all of a
8        pleading . . . we would be creating redundancies within the
         Federal Rules of Civil Procedure." Whittlestone, Inc. v.
9        Handi-Craft Co., See also Yamamoto v. Omiya, 564 F.2d 1319,
         1327 (9th Cir. 1977) ("Rule 12(f) is neither an authorized
10       nor a proper way to procure the dismissal of all or a part of
         a complaint." (Citation omitted)). Id. at 974.

11

12       Whittlestone reasoned that Rule 12(f) motions are reviewed for

13  abuse of discretion, whereas 12(b)(6) motions are reviewed de novo.

14  Id. Thus, if a party seeks dismissal of a pleading under Rule

15  12(f), the district court's action would be subject to a different

16  standard of review than if the district court had adjudicated the

17  same substantive action under Rule 12(b)(6). Id.

18       **C.   Motion For A More Definite Statement**

19       "If a pleading to which a responsive pleading is permitted is

20  so vague or ambiguous that a party cannot reasonably be required

21  to frame a responsive pleading, the party may move for a more

22  definite statement before interposing a responsive pleading." Fed.

23  R. Civ. P. 12(e). "The situations in which a Rule 12(e) motion is

24  appropriate are very limited." 5A Wright and Miller, Federal

25  Practice and Procedure § 1377 (1990). Furthermore, absent special

26  circumstances, a Rule 12(e) motion cannot be used to require the

pleader to set forth "the statutory or constitutional basis for his claim, only the facts underlying it." McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990).  However, "even though a complaint is not defective for failure to designate the statute or other provision of law violated, the judge may in his discretion . . . require such detail as may be appropriate in the particular case."  McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

### III. ANALYSIS

**A.    Motion To Dismiss Claim For Punitive Damages**

**1.    Background**

Plaintiff argues that an indemnitor may not seek tort liability, including punitive damages, against a surety based on a cause of action for a breach of the implied covenant of good faith and fair dealing under California law.[4] Pl's Motion at 12: 21-22. Dunmore argues that punitive damages are recoverable in this action because he is not making a claim for breach under the suretyship contract; rather, he is making a claim for breach of the indemnity agreement.[5] He alleges that plaintiff acted, and continues to act, irresponsibly with regard to pay-outs under the performance bonds. ACC at ¶ 190. Dunmore further

---

[4] Plaintiff also states that Dunmore's claim for punitive damages is prejudicial and causes delay and confusion. Pl's Motion at 12: 23-24.

[5] Dunmore alleges that Plaintiff has misconstrued the relationships of the parties because the principal, DHNY is in bankruptcy. Dunmore is merely an indemnitor of DHNY, rather than the principal under the suretyship agreement. See ACC at 3: 15-16.

9

1  argues that the implied covenant of the indemnity agreement was

2  violated because Plaintiff seeks personal indemnification from

3  Dunmore after DHI declared bankruptcy even though the Net Worth

4  Rider limited Dunmore's personal liability under such

5  circumstances. Def.'s Oppo at 3: 15-21; ACC at ¶¶ 2-4.

6      A surety is "one who promises to answer for the debt,

7  default, or miscarriage of another, or hypothecates property as

8  security therefor." Cal. Civ. Code § 2787. A surety bond is a

9  "written instrument executed by the principal and surety in

10 which the surety agrees to answer for the debt, default, or

11 miscarriage of the principal." Butterfield v. Northwestern

12 National Ins. Co., 100 Cal. App. 3d 974, 978 (1980) (internal

13 quotations removed). In suretyship, the risk of loss remains

14 with the principal, while the surety merely lends its credit so

15 as to guarantee payment or performance in the event that the

16 principal defaults. Schmitt v. Insurance Co. of North America,

17 230 Cal. App. 3d 245, 257 (1991). In the absence of default, the

18 surety has no obligation. Id.

19     The California Supreme Court has held that, "[I]ndemnity

20 refers to 'the obligation resting on one party to make good a

21 loss or damage another party has incurred." Prince v. Pacific

22 Gas & Elec. Co., 45 Cal. 4th 1151, 1157 (2009) (internal

23 citation omitted). Here, the indemnity agreement is express

24 because it "arises by virtue of express contractual language

25 establishing a duty in one party to save another harmless upon

26 the occurrence of specified circumstances." Id. at 1158

1  (internal quotation omitted). The court then conducted a

2  historical review of the doctrine, and concluded:

> Express indemnity generally is not subject to
> equitable considerations or a joint legal obligation
> to the injured party; rather, it is enforced in
> accordance with the terms of the contracting parties'
> agreement. . . . In the context of noninsurance
> indemnity agreements, if a party seeks to be
> indemnified for its own active negligence, or
> regardless of the indemnitor's fault, the contractual
> language on the point "must be particularly clear and
> explicit, and will be construed strictly against the
> indemnitee. . . ." In this sense, express indemnity
> allows contracting parties "great freedom to allocate
> [indemnification] responsibilities as they see fit,"
> and to agree to "protections beyond those afforded by
> the doctrines of implied or equitable indemnity. . .
> ."

12  Id. (internal citations omitted).

13           **2.   Covenant of Good Faith and Fair Dealing**

14                **a.   Generally**

15       Under California law, it is well established that a

16  covenant of good faith and fair dealing is implicit in every

17  contract. Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683

18  (1988). The essence of the implied covenant is that neither

19  party to a contract will do anything to injure the right of the

20  other to receive the benefits of the contract. Cates

21  Construction, Inc. v. Talbot Partners, 21 Cal. 4th 28, 43

22  (1999). Breach of the covenant is a contract claim absent

23  unusual policy concerns. To date, the California Supreme Court

24  has only extended tort liability in the insurance context.

25  Cates, 21 Cal.4th at 43; see also Cal. Civ. Code § 3294. The

26  court's decision to acknowledge tort recovery in the particular

1  context of insurance policies was based on a variety of policy

2  reasons and was deemed "a major departure from tradition

3  principles of contract law." Id. at 46. In particular, the

4  California Supreme Court has reasoned that "insurers'

5  obligations are . . . rooted in their status as purveyors of a

6  vital service labeled quasi-public in nature." Foley, 47 Cal. 3d

7  at 684-85 (internal quotation omitted). Thus, because insurers

8  supply "a public service rather than a manufactured product . .

9  . [t]he obligations of good faith and fair dealing encompass

10 qualities of decency an humanity inherent in the

11 responsibilities of a fiduciary." Id. at 685 (internal quotation

12 omitted). Further, the court allowed tort recovery in insurance

13 cases in light of the inherently unbalanced relationships

14 between insurer and insured because "the adhesive nature of

15 insurance contracts places the insurer in a superior bargaining

16 position." Id. (internal quotation omitted).

17                    **b.    Suretyship Agreement**

18      In Cates, the Court held that tort damages are not

19 recoverable for a breach of the implied covenant of good faith

20 and fair dealing in the context of a suretyship contract. The

21 court reasoned that because the covenant of good faith and fair

22 dealing is essentially a contract term that aims to effectuate

23 the contractual intentions of the parties, "compensation for its

24 breach has almost always been limited to contract rather than

25

26

tort remedies."[6] Id. (quoting Foley, 47 Cal.3d at 684). This is true even where the defendant's actions in breach are "wilful, fraudulent, or malicious." Id. The court continued to find that, although suretyship is listed in the Insurance Code as a class of insurance, it does not follow that a surety bond equates to a policy of insurance under common law liability. Id. at 52.

The court distinguished construction performance contracts or "contract[s] of suretyship" based on these policy considerations and held that tort recovery, based on the implied covenant of good faith and fair dealing, is not be available in such cases. Id. at 60 ("we are reminded that '[c]ontract law exists to enforce legally binding agreements between parties; tort law is designed to vindicate social policy'" (quoting Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 514 (1994)). Specifically, the court reasoned that "tort remedies are appropriate for breaches in the insurance policy context because insureds generally do not seek commercial advantage by purchasing policies; rather they seek protection against calamity." Id. at 53. Contracts for sureties, then, do not contain tort remedies because they are generally entered to obtain commercial advantage. See id.

Further, the Court noted that an insurance policy is distinct in nature because it is characterized by elements of

---

[6] See also Cal. Civ. Code, § 3294, subd. (a) "punitive or exemplary damages, which are designed to punish and deter . . . are available only in actions for breach of an obligation not arising from contract."

1  adhesion, public interest, and fiduciary responsibility. <u>Cates</u>,

2  21 Cal.4th at 44. For example, performance bonds typically

3  incorporate the underlying construction contract, the terms and

4  conditions of which have been negotiated by the principal and

5  the obligee without any input from the surety. <u>Id.</u> Because the

6  nature and extent of a surety's obligations under a performance

7  bond are determined with reference to such terms and conditions,

8  bonds do not reflect the adhesion and unequal bargaining power

9  that are inherent in insurance policies. <u>Id.</u> at 52-53.

10     Additionally, an insured faces a unique "economic dilemma"

11  when its insurer breaches because an insured cannot typically

12  seek recourse in the marketplace in the event of a breach.

13  <u>Cates</u>, 21 Cal.4th at 44. Another insurance company will

14  generally not pay for a loss already incurred. <u>Id.</u> The court

15  also observed that the relationship between the contracting

16  parties in the context of a suretyship contract differs from the

17  quasi-fiduciary relationship between the insurer and the

18  insured. <u>Cates</u>, 21 Cal.4th at 44. An insurer is obligated to

19  give at least as much consideration to the welfare of its

20  insured as it gives to its own interests so as not to deprive

21  the insured of the benefits of the insurance policy due to the

22  insurer's assumption of the insured's defense and of settlement

23  negotiations of third party claims. <u>Id.</u>

24     Dunmore has made several arguments regarding the breach of

25  the implied covenant of good faith and fair dealing with

26  relation to the suretyship contract. In particular, the court

finds that insofar as Dunmore is alleging that Plaintiff was "irresponsible" with regard to pay-outs under the performance bonds, Dunmore is alleging a breach of the suretyship agreement, as this agreement was what created the obligation on the part of Plaintiff to make pay-outs in the first place. California law is well-established in this area. Claims for breach of good faith and fair dealing in surety contracts do not allow for an award of punitive damages. Thus, Dunmore's claim for punitive damages cannot stand under this theory.

### c.    Indemnity Agreement

The question of whether Dunmore has sufficiently pled a claim for punitive damages under a breach of the indemnity agreement is more difficult. Nonetheless, the court finds that regardless of which theory Dunmore alleges, his claim for punitive damages must be dismissed because California courts have not extended the narrow exception regarding the recovery of tort damages outside the context of insurance policies and no policy concerns warrant extending the exception here.

No California court has likened indemnity agreements to insurance policies for the purposes of awarding tort damages nor dealt with the subject directly; however, two cases are persuasive. In <u>Schmitt v. Insurance Co. of North America</u>, two principals brought an action against a surety for breach of the covenant of good faith and fair dealing.[7] 230 Cal. App. 3d 245,

---

[7] This case dealt with a licensed motor vehicle dealer's bond rather than a construction performance bond.

256 (1991). The court held that the principals could not sue the

surety for non-payment under the bond because the surety had no

duty to pay until after the principal's legal obligation was

established. Id. at 256. The court reasoned it is not the duty

of the surety to protect the principal as if the principal were

an insured under an insurance policy and that the existence of

an indemnity agreement between surety and principal does not

change this relationship. Schmitt, 230 Cal. App. 3d at 256-258

(emphasis added). The court explained:

> "[a] surety bond is not an insurance policy. It
> represents nothing more than an undertaking to
> indemnify a person, or the public, against losses
> resulting from acts of the principal . . . . It merely
> constitutes a guarantee the surety will assume the
> principal's liability only if the latter is unable to
> make full payment . . . . This fundamental difference
> between insurance and a financial responsibility bond
> compels this court to find that a financial
> responsibility bond is not insurance." (Quoting
> Lumbermens Mutual Casualty Co. v. Agency Rent-A-Car,
> Inc., 128 Cal.App.3d 764, 769-770 (1982) (internal
> citations and quotation marks removed).

In Bramalea California, Inc. v. Reliable Interiors, Inc.,

the California Court of Appeals held that the collateral source

rule did not apply to a breach of contract claim where a

contractor sought to obtain attorney's fees pursuant to an

indemnity agreement. 119 Cal. App. 4th 468, 472 ( 2004). The

court held that even though the indemnity agreement explicitly

provided for attorneys' fees, because the contractor had already

recovered the fees through an insurance policy, any recovery the

contractor might receive would be a prohibited double recovery

unless allowed by the collateral source rule.[8] Id. The court

reasoned that the collateral source rule did not apply because

it applies to tort damages, not contract damages. Plut v.

Fireman's Fund Ins. Co., 85 Cal. App. 4th 98, 107 (2000). This

is due to the fundamental differences between tort and contract

damages. Id. at 108. "The collateral source rule is punitive;

contractual damages are compensatory. The collateral source

rule, if applied to an action based on breach of contract, would

violate the contractual damage rule that no one shall profit

more from the breach of an obligation than from its full

performance." Patent Scaffolding Co. v. William Simpson Const.,

256 Cal. App. 2d 506, 511 (1967). In contrast, "'the

tortfeasor's responsibility [is] to compensate for all harm that

he causes, not confined to the net loss that the injured party

receives.'" Plut, 85 Cal.App.4th at 108.

While these cases are not completely analogous to the case

at hand, the court finds the analysis persuasive. Whether

Dunmore brings his claim for breach under the suretyship

agreement or under the indemnity agreement is simply semantics,

it does not change the relationship of the parties. It is a

basic rule of California law that "conduct amounting to a breach

of contract becomes tortious only when it also violates a duty

---

[8] The collateral source rule allows an injured person to
recover from the wrongdoer for damages suffered even if he has been
compensated for the injury "from a source wholly independent of the
wrongdoer," such as insurance. Anheuser-Busch, Inc. v. Starley, 28
Cal.2d 347, 349 (1946).

1  independent of the contract arising from principles of tort

2  law." Erlich v. Menezes, 21 Cal.4th 543, 551 (1999) (citing

3  Applied Equip. Corp., 7 Cal.4th at 515). Because Dunmore has not

4  alleged an independent cause of action in tort, the claim for

5  punitive damages must be dismissed, as it is not plausible that

6  Dunmore will be able to recover these damages in his claim

7  against Plaintiff. Therefore, Plaintiff's Motion to Dismiss

8  Dunmore's request for punitive damages is granted.

9       **B.   Motion To Strike**

10      Plaintiff asserts that Dunmore's First Amended Counterclaim

11 should be stricken as redundant because it is the same as his

12 Eighth Affirmative Defense. This counterclaim is for offset. It

13 contends that the court should strike the counterclaim because

14 (1) the factual and legal issues related to both the

15 counterclaim and the eighth affirmative defense are the same;

16 (2) the counterclaim "serves no useful purpose" (i.e. it could

17 not provide independent relief that continues even after the

18 complaint (and the answer) have been litigated); and (3)

19 Plaintiff is prejudiced by the [counterclaim]." See generally,

20 Pl's Motion at 24-28. Dunmore asserts that the counterclaim

21 should not be stricken because it seeks damages in addition to

22 offset. Def's Oppo at 8: 25-28.

23      Plaintiff relies on Berger v. Seyfarth Shaw, LLP., No. C

24 07-05279 JSW, 2008 WL 2468478 at *2 (N.D. Cal. June 17, 2008),

25 to argue that the court has discretion to strike a counterclaim

26 "[w]here the counterclaim is identical to the affirmative

defense". <u>Berger</u> is distinguishable from the case at bar,
however, because the "redundant" counterclaim was a prayer for
strictly declaratory relief, which would have necessarily been
disposed of once a decision was reached on the merits of the
case. <u>See generally</u>, 2008 WL 2468478.

Courts generally caution against dismissal of counterclaims
as redundant simply because they concern the same subject matter
or arise from the same transaction as the complaint. <u>See</u>
<u>Stickrath v. Globalstar, Inc.</u>, No. C07-1941, 2008 WL 2050990
(N.D. Cal. May 13, 2008). The proper inquiry is whether the
counterclaims "serve any useful purpose," <u>Pettrey v. Enterprise</u>
<u>Title Agency, Inc.</u>, 2006 WL 3342633 at *3 (N.D. Ohio, November
17, 2006) (citing Wright, Miller & Kane, 6 Federal Practice &
Procedure 2d § 1406), and, thus, courts should dismiss or strike
a redundant counterclaim only when "it is clear that there is a
complete identity of factual and legal issues between the
complaint and the counterclaim." <u>Pettrey</u>, at *3 (citing <u>Aldens,</u>
<u>Inc. v. Israel Packel</u>, 524 F.2d 38, 51-52 (3d Cir. 1975)).

"The label 'counterclaim' has no magic. What is really an
answer or defense to a suit does not become an independent piece
of litigation because of its label." <u>Tenneco Inc. v. Saxony Bar</u>
<u>& Tube, Inc.</u>, 776 F.2d 1375, 1379 (7th Cir. 1985) (citing Fed.
R. Civ. Pro. 8(c); <u>see also</u> Fed. R. Civ. Pro. 8(c)(2) ("If a
party mistakenly designates a defense as a counterclaim, or a
counterclaim as a defense, the court must, if justice requires,
treat the pleading as though it were correctly designated . . .

1  .").

2      Alternately, the counterclaim may seek different relief, in

3  addition to raising legal issues that the court may not reach in

4  resolving the complaint and affirmative defenses. For instance,

5  in Iron Mountain Sec. Storage Corp. v. American Specialty Foods,

6  Inc., 457 F. Supp. 1158 (D.C. Pa. 1978), the plaintiff sought a

7  declaration of the parties' rights and obligations, including

8  rights to certain payments, under an option agreement. The

9  defendant pled a counterclaim, alleging breach of the agreement

10 and seeking damages for the breach. Id. at 1161-62. The court

11 held that the counterclaim was not superfluous (and therefore

12 not subject to dismissal) because it sought damages "beyond the

13 scope of the complaint.". See also Brawley v. Alltel Corp., No.

14 CV-08-0068, 2008 WL 2065976 (D. Ariz. May 13, 2008).

15      The court finds that Dunmore is seeking other costs and

16 fees in addition to those that will offset any monies he may be

17 found to owe plaintiff. Dunmore seeks to establish not only a

18 defense to liability or a reduction in damages, but also

19 liability on the part of plaintiff and the recovery of

20 consequential damages due to business disruption, special

21 damages and injunctive relief, including the disgorgement of

22 funds. If the court were to strike Dunmore's counterclaim, it

23 would in essence be dismissing these claims for relief without

24 addressing their merits. See Whittlestone, supra. Thus,

25 plaintiff's motion to strike the first amended counterclaim is

26 denied.

1       **C.    Motion For A More Definite Statement**

2       Plaintiff asserts that Dunmore's claims for damages are not

3  specific enough to allow it to prepare a response. <u>See generally</u>

4  Pl's Motion at 28-29. Dunmore argues in his opposition that he

5  has specifically pled facts sufficient for plaintiff to respond

6  to his counterclaim and prayer for relief. The court finds that

7  Dunmore has not pled sufficient facts to support the prayer for

8  relief as it relates to Dunmore's counterclaim.

9       In order to succeed on a motion for a more definite

10 statement, Dunmore's counterclaims would have to be "so vague or

11 ambiguous that a party cannot reasonably be required to frame a

12 responsive pleading." Fed. R. Civ. P. 12(e). Plaintiff takes

13 issue with three section of Dunmore's prayer for relief: (1)

14 Special Damages, (2) Injunctive Relief, including but not

15 limited to disgorgement of funds, and (3) Consequential damages

16 due to business disruption. Dunmore does not allege any facts

17 from which the court can infer that he would be entitled to such

18 relief. For this reason, the court grants plaintiff's motion for

19 a more definite statement

20                        **IV. CONCLUSION**

21      For the foregoing reasons the court orders as follows:

22      (1)   Plaintiff's motion to dismiss Dunmore's claim for

23            punitive damages (ECF No. 198) is GRANTED.

24      (2)   Plaintiff's motion to strike the first amended

25            counterclaim (ECF No. 198) is DENIED.

26      (3)   Plaintiff's motion for a more definite statement (ECF

1    No. 198) is GRANTED. Dunmore must file a second

2    amended counterclaim within twenty-one (21) days of

3    the issuance of this order. In this amendment Dunmore

4    must provide factual support for his alleged

5    entitlement to the damages sought in his counterclaim.

6    Dunmore may also add additional counterclaims that

7    would entitle him to punitive damages. Dunmore is

8    cautioned not to re-plead insufficient counterclaims,

9    or to falsely plead.

10  IT IS SO ORDERED.

11  DATED:  December 14, 2010.

12

13

14                

15          LAWRENCE K. KARLTON
            SENIOR JUDGE

16          UNITED STATES DISTRICT COURT

17

18

19

20

21

22

23

24

25

26