UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,
a Connecticut corporation,

        NO. CIV. S-07-2493 LKK/DAD

    Plaintiff,

  v.

        O R D E R

SIDNEY B. DUNMORE, an
individual; SID DUNMORE
TRUST DATED FEBRUARY 28,
2003, a California trust;
SIDNEY B. DUNMORE, Trustee
for Sid Dunmore Trust Dated
February 28, 2003; DHI
DEVELOPMENT, a California
corporation,

    Defendants.

_____/

    This case concerns various disputes arising out of plaintiff and counter-defendant Travelers Casualty and Surety Company of America's ("Travelers") guarantee of performance bonds for certain home construction projects of defendant and counter-plaintiff Sidney B. Dunmore ("Dunmore"). At issue in the instant motion is Travelers' motion to dismiss, to strike, and for a more definite

1

statement of Dunmore's counterclaims. For the reasons discussed below, Traveler's motion is granted in part. Dunmore is granted limited leave to file an amended counterclaim.

## I. BACKGROUND

### A. Factual Background

Dunmore was engaged in home construction. He, and various trusts and businesses associated with him, entered into an agreement with Travelers, wherein Travelers agreed to guaranty performance bonds issued by defendants pursuant to several construction contracts, subject to defendants' promise to indemnify plaintiff with respect to these guarantees. As part of these bond agreements, the parties negotiated a Limited Liability and Net Worth Rider ("Rider"), which is the primary subject of the dispute addressed in this order. The relevant language in the Rider states that,

> Except as provided herein, it is agreed and understood that in any and all demands, actions, legal proceedings or claims brought by company for indemnification, the joint and several liability of Sidney B. Dunmore and the Sid Dunmore Trust Dated February 28, 2003, hereinafter referred to as "Dunmore Limited Liability Indemnitors," to Company shall not exceed the sum of $1,500,000.00 ("Dunmore Liability Limit").
> PROVIDED HOWEVER, that Operating Entity *at all times shall maintain its Tangible Net Worth at a level not less than $25,000,000* ("the Minimum Net Worth"). In the event Operating Entity's Tangible Net Worth at any time falls below the Minimum Net Worth, then, as to all Bonds whenever executed, the Dunmore Liability Limit shall not apply, and the Dunmore Limited Liability Indemnitors shall be liable to the Company under the Agreements as if this Rider had never been executed.

Second Amended Counter-Claim ("SACC"), Doc. No. 211 at 55 (Jan. 3,

2

2011) (emphasis added). The Rider is less than one page long. <u>Id.</u>

Dunmore, however, alleges that prior to signing the Rider, representatives of Travelers orally communicated to Dunmore's broker, Joe Weber, that Travelers would limit Dunmore's personal liability under the indemnity agreement to $1,500,000.00 provided that "at the time the bonds were issued" Dunmore Homes maintained a net worth of $25,000,000.00. <u>Id.</u> at 17 (Jan. 03, 2011). He further alleges that Travelers made these oral representations in order to induce Dunmore to continue to use Travelers' bonds, pay an increased bond premium, and sign a document that "did not contain the agreed upon terms." <u>Id.</u> at 20.

Subsequent to the issue of these bonds, Dunmore Homes' net worth dropped below $25,000,000. Pursuant to the Rider, Travelers seeks in this action to recover from Dunmore. Dunmore challenges the validity of the Rider due to Travelers' alleged oral representations prior to the signing of the document.

**B.   Procedural History**

On November 19, 2007, Travelers filed a complaint seeking recovery against defendants for claims arising out of the indemnity agreement. Dunmore then filed an answer and counter-claims, seeking punitive damages. On December 15, 2010, this court granted Travelers' motion to dismiss the counterclaims and motion for a more definite statement, and gave Dunmore leave to amend his counter-claims. The court instructed Dunmore that he may add counter-claims entitling him to punitive damages but cautioned him not to re-plead insufficient counterclaims or to falsely plead.

Order, Doc. No. 210 at 22 (Dec. 15, 2010). On January 3, 2011 Dunmore filed his SACC. In it, he pled five causes of action. These were (1) fraud, (2) promise without intent to perform, (3) unjust enrichment, (4) breach of implied covenants, and (5) abuse of process. Dunmore subsequently withdrew his abuse of process claim. Presently before the court are Travelers' motion to dismiss Dunmore's first, second, and third causes of action, pursuant to Rule 12(b) and Rule 9(b); and rule 12(f) motions to strike allegations of overpayment in the first cause of action, and the fourth cause of action in its entirety.[1]

## II. STANDARDS

### A.  Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations.  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.

---

[1] The court does not consider Travelers' motion for a more definite statement because Travelers requested that the court not consider the pages of its memorandum that addressed this argument after the court informed Travelers that it failed to comply with this court's rule on page limits.

4

Ct. 1937, 1950 (2009).  "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth.  <u>Id.</u> at 1949-50.  <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two step process for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief."  <u>Id.</u>; <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).

"Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not refer to the likelihood that a pleader will succeed in proving the allegations.  Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

**B.   Fed. R. Civ. P. 12(f) Motion to Strike**

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous

matter." A party may bring on a motion to strike within 21 days after the filing of the pleading under attack. The court, however, may make appropriate orders to strike under the rule at any time on its own initiative. Thus, the court may consider and grant an untimely motion to strike where it seems proper to do so. See 5A Wright and Miller, Federal Practice and Procedure: Civil 2d 1380.

A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* by 510 U.S. 517 (1994). A matter is impertinent if it consists of statements that do not pertain to and are not necessary to the issues in question. Id. Redundant matter is defined as allegations that "constitute a needless repetition of other averments or are foreign to the issue." Thornton v. Solutionone Cleaning Concepts, Inc., No. 06-1455, 2007 WL 210586 (E.D. Cal. Jan. 26, 2007), citing Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005).

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. See 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d 1380; see also Hanna v. Lane, 610 F. Supp. 32, 34 (N.D. Ill. 1985). However, granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues. Fantasy, 984 F.2d at 1527-28.

If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. See <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970 (9th Cir. 2010); see also 5A Wright & Miller, <u>supra</u>, at 1380. <u>Whittlestone</u> emphasized the distinction between Rule 12(f) and Rule 12(b)(6) and held that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law. <u>Id.</u> at 976.

> "Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading . . . we would be creating redundancies within the Federal Rules of Civil Procedure." <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, See also <u>Yamamoto v. Omiya</u>, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint." (Citation omitted)). <u>Id.</u> at 974.

<u>Whittlestone</u> reasoned that Rule 12(f) motions are reviewed for abuse of discretion, whereas 12(b)(6) motions are reviewed de novo. <u>Id.</u> Thus, if a party seeks dismissal of a pleading under Rule 12(f), the district court's action would be subject to a different standard of review than if the district court had adjudicated the same substantive action under Rule 12(b)(6). <u>Id.</u>

### III. ANALYSIS

Dunmore brings four counter-claims. They are (1) fraud, (2) promise made without the intent to perform, (3) unjust enrichment, and (4) offset and breach of the implied covenant of good faith and

fair dealing.[2] The first three counter-claims are all slight permutations of a single fraud claim. Specifically, they all apparently depend upon the alleged oral communications of Travelers' agents concerning the nature of the Rider. Accordingly, the court will first address Dunmore's fraud claims and will then address his final counter-claim.

### A.   Fraud Counter-Claims

While Dunmore's counter-complaint contains 146 paragraphs of factual allegations, it appears to the court that all of his fraud claims depend upon the alleged verbal representations made to Dunmore and/or his agents concerning the nature of the indemnity agreement. Counsel for Dunmore confirmed this understanding at oral argument. Specifically, Dunmore contends that these agents misrepresented to him that the indemnity agreement limited his personal liability to $1,500,000.00 so long as Dunmore Homes maintained a net worth of $25,000,000.00 at the time the bonds were issued. The terms of the written agreement, however, clearly provide that the liability limit only applies so long as Dunmore Homes maintained a net worth of $25,000,000 at all times relevant to the Rider. The Rider further states that, "In the event that the [Dunmore Homes'] [n]et [w]orth at any time falls below [$25,000,000.00], then, as to all [b]onds whenever executed, the Dunmore Liability Limit shall not apply and the Dunmore Limited Liability Indemnitors shall be liable as if this Rider had never

---

[2] As noted, Dunmore has withdrawn his fifth counter-claim for abuse of process.

8

been executed." Dunmore contends that the verbal representations induced him to sign the Rider, which caused him significant injury.[3]

The elements of a claim for intentional misrepresentation under California law are (1) misrepresentation (a false representation, concealment or nondisclosure), (2) knowledge of falsity, (3) intent to defraud (to induce reliance), (4) justifiable reliance, and (5) resulting damage. Agosta v. Astor, 120 Cal. App. 4th 596, 603 (2004). Ordinarily, the decision of whether reliance is justifiable is a question for the trier of fact. Alliance Mortgage Co. v. Rothwell, 10 Cal.4th 1226, 1239 (1995). However, where oral representations conflict with the terms of a subsequent written agreement, a party cannot justifiably rely on such oral statements as a matter of law. See Dias v. Nationwide Life Ins., 700 F. Supp. 2d 1204, 1216-17 (E.D. Cal. 2010) (describing California law on this issue with respect to insurance policies); see also Bank of the West v. Valley Nat. Bank of Az., 41 F.3d 471, 477 (9th Cir. 1994) ("[T]he clear and explicit language of the contract prevented justifiable reliance.").

Under California law, "an insured is under a duty to read his insurance policy, and the insured will be charged with constructive knowledge of policy provisions which are plaint, clear, and

---

[3] Dunmore also argues in his opposition that the Rider is fraudulent because its illusory in that it lacks consideration. Absence of consideration is clearly a defense to contract, however it cannot sustain a claim for fraud; a fraud claim requires a misrepresentation.

9

conspicuous." Id. at 1216 (citing Spray, Gould & Bowers v. Associated Internat. Ins. Co., 71 Cal. App. 4th 1260, 1272 (1999); Hadland v. NN Investors Life Ins. Co., 24 Cal. App. 4th 1578, 1586 (1994). Such knowledge or constructive knowledge defeats the element of justifiable reliance where "the misrepresentations are not inconsistent with the terms of an insurance policy." Dias, 700 F. Supp. 2d at 1216-17.

As the court discussed in its order on Dunmore's previous answer and counter-claims, California law provides special protection to insureds due to the unique public policy concerns in the relationship between the insurer and insured. See Order, Doc. No. 201, at 12 (internal citations omitted). The court further recognized that California law has not extended these special protections to surety contracts because parties enter surety contracts for commercial purposes rather than the non-commercial purpose of protection against calamity that drives parties to enter insurance contracts. Id. at 13 (internal citations omitted). California law further recognized that insurance contracts differ from surety contracts in that the insured faces a unique economic dilemma when its insurer breaches because the insured cannot typically seek recourse in the marketplace. Id. at 14 (citations omitted). The court then applied the reasoning from the well-established California law on surety and insurance contracts, to conclude that indemnity agreements also do not deserve the special protections available in insurance contracts. Id. at 15-18.

For these reasons, the court determines that the California

Supreme Court, if presented with this question of justifiable reliance in the context of an indemnity agreement, would likely determine that indemnity contracts are at least subject to the same standards of constructive knowledge as are insurance contracts. This is especially so as applied to the instant case where the Rider was less than a page long and signed by both Dunmore, a sophisticated businessman, and his lawyer. Most insurance contracts are significantly longer than the Rider at issue here and also many insureds are not nearly as sophisticated as Dunmore nor do they benefit from the advice of counsel when entering an insurance contract. Thus, Dunmore's fraud-based counter-claims fail to state a claim upon which relief might be granted because he has failed to allege facts from which the court could infer justifiable reliance. Specifically, his allegations demonstrate constructive knowledge of the terms of the Rider and, thus, it was unreasonable for him to rely upon the alleged representations of Travelers' representatives that contradict those terms.[4]

**B.   Offset and Breach of the Covenant of Good Faith and Fair Dealing Counter-Claim**

Travelers also asserts that Dunmore's fourth cause of action for offset and breach of the implied covenant of good faith and

---

[4] Dunmore's fraud claims also fail to meet the heightened pleading standard of Fed. R. Civ. P. 9(b). He failed to plead the date, location, manner, and speaker of the alleged misrepresentations. Further, he failed to demonstrate that he is entitled to limited discovery in order to meet the heightened pleading standard. See Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993).

11

fair dealing should be stricken as redundant to Dunmore's eighth affirmative defense, pursuant to Fed. R. Civ. P. 12(f). Motion, Doc. No. 212-1 at 27 (Jan. 18, 2011). Travelers contends that the claim has complete identity with Dunmore's eighth affirmative defense and, consequently, that the claim serves no useful purpose. Id. at 28-30. Dunmore's eighth affirmative defense states that "Defendants have sustained damages as a result of Plaintiff's breaches of the subject contract and such damages serve as an offset to any recovery by Plaintiff herein." SACC, Doc. No. 211 at 12 (Jan. 3, 2011). This court thoroughly addressed this matter in its prior order dated December 15, 2010. Order, Doc. No. 210 at 18-20 (Dec. 20, 2011). As stated in the prior order, this court finds that Dunmore's counter-complaint seeks costs and fees in addition to those that will offset any monies owed to plaintiff. The fourth cause of action is not redundant and Travelers motion is denied.[5]

## IV. CONCLUSION

For the foregoing reasons, the court orders as follows:

---

[5] There appears significant confusion as to the nature of Dunmore's fourth counter-claim. The court construes the claim as a claim for breach of the covenant of good faith and fair dealing of which offset is one type of relief sought. Travelers argues for the first time in reply that Dunmore failed to provide a more definite statement, as the court previously ordered, as to the facts from which the court can infer that he has would be entitled to special damages, injunctive relief, and consequential damages. Thereby, Travelers argues, the only relief Dunmore could seek for his counter-claim of breach of the covenant is offset, which is redundant to his affirmative defense. The court cannot consider such an argument first raised in reply. Nor is it apparent that the court would grant the motion to strike if it did consider the late argument. For this reason, the court sees no reason to reconsider its prior ruling on Travelers' identical motion.

12

(1) Traveler's motion to dismiss Dunmore's First, Second, Third, and Fifth Counter-Claims (Doc. No. 212) is GRANTED. These Counter-Claims are DISMISSED WITH PREJUDICE. Dunmore is not granted leave to amend these claims as amendment would be futile.

(2) Travelers' motion to strike (Doc. No. 212) Dunmore's Fourth Counter-Claim is DENIED.

(3) Travelers' motion for a more definite statement (Doc. No. 212) is DENIED AS MOOT.

IT IS SO ORDERED.

DATED: March 1, 2011.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT