1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11  TRAVELERS CASUALTY AND                    No.  2:07-CV-02493 TLN DAD
    SURETY COMPANY OF AMERICA,
12
                   Plaintiff,
13                                            **ORDER**
            v.
14
    SIDNEY B. DUNMORE, ET AL.,
15
                   Defendants.
16

17

18          This matter is before the Court pursuant to Plaintiff Travelers Casualty and Surety

19  Company of America's (hereinafter referred to as "Plaintiff" or "Travelers") Motion for

20  Summary Judgment (ECF No. 268).  Defendants Sidney B. Dunmore, an individual and Sidney

21  B. Dunmore, Trustee for Sid Dunmore Trust Dated February 28, 2003 (hereinafter collectively

22  referred to as "Defendants") oppose Plaintiff's motion.  (*See* Opp'n to Mot. for Summ J., ECF

23  No. 306.)  The Court has considered the arguments raised in Plaintiff's motion and reply brief, as

24  well as Defendants' opposition.  For the reasons stated below, Plaintiff's Motion is GRANTED

25  IN PART and DENIED IN PART.

26  *///*

27  *///*

28  *///*

                                              1

## I.    FACTUAL BACKGROUND[1]

On or about December 15, 2005, Travelers and Defendants, entered into a General Agreement of Indemnity ("Indemnity Agreement"), as partial consideration for Travelers[2] issuing bonds on behalf of Dunmore Homes and its SPE affiliates and subsidiaries.[3]  (Resp. to Defs.' SUD in Opp. to Mot. for SJ, ECF No. 307-3 at ¶ 3.)  Pursuant to the various contracts and in accordance with the Indemnity Agreement, Travelers and Dunmore Homes executed certain surety bonds ("the Bonds").  (ECF No. 307-3 at ¶ 23.)  Travelers issued 103 construction related surety bonds for subdivision projects with Dunmore Homes SPEs as developers.  (ECF No. 307-3 at ¶ 30.)  Dunmore Homes subsequently defaulted on certain performance and payment obligations under various contracts and the Bonds, and, as a result, certain obligees (i.e., the persons or entities to whom Dunmore Homes and Travelers owe a duty) and claimants made claims against the Bonds.  (ECF No. 307-3 at ¶ 24.)  On October 30, 2007, Travelers sent a written demand to Defendants for defense, indemnity, collateral, and books and records, pursuant to Travelers' rights and Defendants' obligations under the Indemnity Agreement.  (ECF No. 307-

[1]      The following factual background section is derived from the parties' submissions of undisputed facts.  In response to Plaintiff's statement of undisputed facts, Defendants filed objections to Plaintiff's evidence in support of its summary judgment motion.  (See Def.'s Objections, ECF No. 303.)  Among other things, Defendants move this Court to strike the entire Declaration of Edward M. Connelly on the basis that he was never disclosed as a witness, percipient expert witness or expert witness.  In response, Plaintiff avers that Mr. Connelly is listed in Travelers' initial disclosures under "personnel employed by Travelers Casualty and Surety Company of America."  (See Pl.'s response to Defs.' Objections, ECF No. 307-2.)  Plaintiff's Supplemental Disclosure which was served on September 1, 2011 states potential witnesses as follows: "Persons employed, retained, or contracted with Travelers Casualty and Surety Company of America, including, but not limited to: Sam Barker [and] James Vicari."  (Exhibit 26, ECF No. 307-1 at 7.)  Plaintiff contends that Mr. Connelly falls within this statement.  Moreover, Plaintiff contends that Mr. Connelly's declarations are declarations of a Travelers employee concerning Travelers' actions and agreements as related to the instant action, and further explains that Mr. Connelly provided a declaration because Mr. Barker (who was specifically disclosed as a witness and worked on the "Dunmore" file for Travelers) is no longer employed by Travelers.  (ECF No. 307 at 3.)

The Court agrees with Plaintiff and further finds that since Defendants were provided with Mr. Connelly's declaration on January 6, 2014, Defendants had plenty of time to depose Mr. Connelly before the scheduled May 22, 2014 hearing date on Plaintiff's motion for summary judgment.  Thus, the Court finds that Defendants are not prejudiced by this Court's consideration of Mr. Connelly's declaration and hereby DENIES Defendants' motion to strike his declaration (ECF No. 303).

[2]      Travelers is an admitted surety insurer qualified to conduct business in the State of California.  Travelers issues surety bonds that guarantee, among other things, the faithful payment and performance of construction contracts.

[3]      Dunmore Homes has had many subsidiary companies, typically organized as Limited Liability Companies ("LLCs").  Each LLC is a Single Purpose Entity ("SPE") formed for the purpose of being the developer for one or two subdivision construction projects.  Each SPE was separately named, such as "Dunmore Croftwood, LLC" for the Croftwood development in the City of Rocklin, "Dunmore Canterbury, LLC" for the Canterbury subdivision in Yuba City, "Dunmore Diamond Ridge, LLC" for the Diamond Ridge development in Bakersfield, "Dunmore Laguna Reserve, LLC," and "Dunmore Montecito, LLC."

1    3 at ¶ 25.)  Pursuant to the "Indemnification and Hold Harmless" provisions of the Indemnity

2    Agreement, Travelers requested that Defendants exonerate, indemnify and save Travelers from

3    and against all Loss (as defined in the Indemnity Agreement).  (ECF No. 307-3 at ¶ 26.)  In

4    addition, Travelers requested that Defendants deposit with Travelers an amount as determined by

5    Travelers sufficient to discharge Loss or anticipated Loss, pursuant to the "Collateral Security"

6    provisions of the Indemnity Agreement.  (ECF No. 307-3 at ¶ 27.)  Defendants did not acquiesce

7    to Travelers' request.  (ECF No. 307-3 at ¶ 25–27.)  Travelers filed suit against Defendants in

8    2007.  (Compl., ECF No. 2.)

9        **II.    LEGAL STANDARD**

10       Summary judgment is appropriate when the moving party demonstrates no genuine issue

11   as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter

12   of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under

13   summary judgment practice, the moving party always bears the initial responsibility of informing

14   the district court of the basis of its motion, and identifying those portions of "the pleadings,

15   depositions, answers to interrogatories, and admissions on file together with the affidavits, if

16   any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*

17   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden

18   of proof at trial on a dispositive issue, a summary judgment motion may properly be made in

19   reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."

20   *Id.* at 324 (internal quotations omitted).  Indeed, summary judgment should be entered against a

21   party who does not make a showing sufficient to establish the existence of an element essential to

22   that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.

23       If the moving party meets its initial responsibility, the burden then shifts to the opposing

24   party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

25   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585−87 (1986); *First Nat'l Bank v. Cities Serv.*

26   *Co.*, 391 U.S. 253, 288−289 (1968).  In attempting to establish the existence of this factual

27   dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

28   tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

3

1    support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

2    demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

3    suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

4    the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

5    the nonmoving party.  *Id.* at 251−52.

6         In the endeavor to establish the existence of a factual dispute, the opposing party need not

7    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

8    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

9    trial." *First Nat'l Bank*, 391 U.S. at 288−89.  Thus, the "purpose of summary judgment is to

10   'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

11   trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

12   amendments).

13        In resolving the summary judgment motion, the court examines the pleadings, depositions,

14   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

15   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305−06 (9th Cir. 1982).  The evidence

16   of the opposing party is to be believed, and all reasonable inferences that may be drawn from the

17   facts placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at

18   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

19   obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

20   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244−45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th

21   Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing

22   party "must do more than simply show that there is some metaphysical doubt as to the material

23   facts." *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational

24   trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587

25   (internal quotations omitted).

26   **III.    ANALYSIS**

27        Plaintiff has moved this Court for summary judgment as to its First Cause of Action for

28   Breach of Contract and its Second Cause of Action for Specific Performance. Plaintiff also moves

1  for summary judgment as to Defendants' counterclaim for breach of implied covenant of good

2  faith and fair dealing.  (ECF No. 268.)  In addition, Plaintiff requests that this Court issue an order

3  compelling repatriation of tax refund proceeds that are allegedly held outside the country.  (ECF

4  No. 268.)  The Court addresses each request in turn.

5        A.    Breach of Contract

6        An indemnity agreement is defined as "the obligation resting on one party to make good a

7  loss or damage another party has incurred."  *Smoketree-Lake Murray, Ltd. v. Mills Concrete

8  Constr. Co.*, 234 Cal. App. 3d 1724, 1734 (1991) (internal quotations omitted).  Such obligations

9  may arise by virtue of express contractual language establishing a duty in one party to save

10  another harmless upon the occurrence of specified circumstances.  *Id.* at 1735–36; *E. L. White,

11  Inc. v. City of Huntington Beach*, 21 Cal. 3d 497, 506 (1978).  Express indemnity reflects "its

12  contractual nature, permitting great freedom of action to the parties in the establishment of the

13  indemnity arrangements while at the same time subjecting the resulting contractual language to

14  established rules of construction."  *Smoketree-Lake Murray*, 234 Cal. App. 3d at 1736.  "In

15  interpreting an express indemnity agreement, the courts look first to the words of the contract to

16  determine the intended scope of the indemnity agreement.  A key factor in determining the scope

17  of the agreement, is the specificity of the language."  *Id.* at 1737; *see also Myers Bldg. Indus.,

18  Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 968 (1993), *as modified on denial of reh'g*

19  (Mar. 26, 1993) ("The indemnity provisions of a contract are to be construed under the same rules

20  governing other contracts with a view to determining the actual intent of the parties.").  The terms

21  "indemnify" and "hold harmless" generally obligate the indemnitor to reimburse the indemnitee

22  for any damages the indemnitee becomes obligated to pay third persons.  *Myers Bldg. Indus.,

23  Ltd.*, 13 Cal. App. 4th at 969.

24        A surety or guarantor (there is no distinction between the two terms) is "one who promises

25  to answer for the debt, default, or miscarriage of another, or hypothecates property as security

26  therefor."  Cal. Civ. Code § 2787 (West).  A performance bond is not an insurance policy.  *See

27  Fort Bragg Unified Sch. Dist. v. Solano Cnty. Roofing, Inc.*, 194 Cal. App. 4th 891, 910 (2011).

28  In contrast to an insurance contract, a performance bond creates a tripartite relationship between

the surety, the principal, and the obligee.  *Id.*; *see Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 58 (1999).  Whereas insurance protects the principal against risk, a performance bond protects the obligee against the principal's default.  *Fort Bragg Unified Sch. Dist.*, 194 Cal. App. 4th at 910.  In essence, a surety bond is essentially a line of credit to the bonded contractor.  In suretyship, the risk of loss remains with the principal, while the surety merely lends its credit so as to guarantee payment or performance in the event that the principal defaults.  *Schmitt v. Ins. Co. of N. Am.*, 230 Cal. App. 3d 245, 257 (1991).  Thus, if the surety is compelled to make payment for damages caused by the principal, it has the right to seek reimbursement from the principal.  *Id.*  Moreover, if a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what the surety has disbursed, including necessary costs and expenses; but the surety has no claim for reimbursement against other persons, though they may have been benefited by his or her act.  Cal. Civ. Code § 2747 (West).

Under California law, the necessary elements to establish a valid cause of action for breach of an indemnity agreement are: (1) existence of an indemnity agreement; (2) performance under the indemnity agreement; (3) breach of the indemnity agreement; and (4) resulting damage.  *Reichert v. General Insurance Co. of America*, 68 Cal. 2d 822, 830 (1968); *Four Star Electric, Inc. v. F&H Construction*, 7 Cal. App. 4th 1375, 1379 (1991).  As discussed below, the Court finds that each of these elements is established and thus grants summary judgment for Plaintiff on its First Cause of Action for Breach of Contract (the Indemnity Agreement).

*1.    The Existence of a Contract*

There is no dispute as to the fact that an indemnity agreement existed between the parties.  The indemnification agreements states as follows:

> Company – Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Insurance Company, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries or such companies and parent companies, and/or any of the aforementioned entities' successors or assigns.
>
> …

6

Default – Any of the following shall constitute a Default: (a) a declaration of Contract default by any Obligee; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract; (e) Company's good faith establishment of a reserve; (f) improper diversion of Contract funds or any Indemnitor's assets to the detriment of Contract obligations; (g) any Indemnitor's becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent; (h) any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be located; (i) any representation furnished to Company by or on behalf of any Indemnitor proving to have been materially false or misleading when made; and/or (j) any change in control or existence of any Indemnitor. Change in control means the addition or departure of any person or entity having a ten percent (10%) or greater interest in any Indemnitor.

…

Loss – All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond, (b) prosecuting or defending any action in connection with any Bond, (c) obtaining the release of any Bond, (d) recovering or attempting to recover Property in connection with any Bond or this Agreement, (e) enforcing by litigation or otherwise any of the provisions of this Agreement, and (f) all interest accruing thereon at the maximum legal rate.

…

3.    Indemnification and Hold Harmless: Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss. An itemized, sworn statement by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability. Amounts due to Company shall be payable upon demand.

4.    Claim Settlement: Company shall have the right in its sole discretion, to determine for itself and its indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with or relating to and Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

(Ex. 1, Dec. 15, 2005 General Agreement of Indemnity, ECF No. 269-1 at 2.) Thus a contract exists.

7

1         *2.      Plaintiff's Performance of the Contract*

2         In 2007, Defendants defaulted on certain performance and payment obligations under

3 various contracts and the Bonds, and, as a result, certain obligees (i.e., the persons or entities to

4 whom Dunmore Homes and Travelers owe a duty) and claimants made claims against the Bonds.

5 (*See* Connelly Decl., ECF No. 269 at ¶14; *see also* Ex. 4, Listing of Claims, ECF No. 269-1 at

6 33–37.)  As discussed in more detail later in this Order, Travelers made numerous payments

7 pursuant to the construction bonds that it issued for Defendants.  Although Defendants argue that

8 Travelers should not have made some of these payments, Defendants do not and cannot dispute

9 that such payments were made by Travelers on Defendants' behalf.  As such, Plaintiff has

10 performed under the contract.

11         *3.      Breach of Contract*

12         On October 30, 2007, Travelers sent a written demand to Defendants for defense,

13 indemnity, collateral, and books and records, pursuant to Travelers' rights and Defendants'

14 obligations under the Indemnity Agreement.  (*See* Connelly Decl., ECF No. 269 at ¶15; Ex. 2,

15 ECF No. 269-1 at 14–20.)  Pursuant to the "Indemnification and Hold Harmless" provision of the

16 Indemnity Agreement, Plaintiff requested that Defendants exonerate, indemnify and "save

17 [Plaintiff] harmless from and against all Loss."   (*See* Connelly Decl., ECF No. 269 at ¶16.)

18 Plaintiff also requested that Defendants deposit with Plaintiff funds sufficient to discharge any

19 Loss or anticipated Loss (as defined in the Indemnity Agreement), pursuant to the "Collateral

20 Security" provision of the Indemnity Agreement.  (*See* Connelly Decl., ECF No. 269 at ¶17.)

21 Pursuant to the "Remedies" provisions of the Indemnity Agreement, Plaintiff requested that

22 Defendants assign, convey and transfer to Plaintiff all of their rights, title and interests in Property

23 (as defined in the Indemnity Agreement).  (*See* Connelly Decl., ECF No. 269 at ¶18.)  Finally,

24 Plaintiff requested that Defendants honor their grant of security interests to Plaintiff, pursuant to

25 the "Security Interest" provisions of the Indemnity Agreement.  (*See* Connelly Decl., ECF No.

26 269 at ¶19.)

27         After the aforementioned written request was made by Travelers, Defendants failed to

28 exonerate, indemnify and save Travelers harmless from and against all Loss (as defined in the

1  Indemnity Agreement).[4]  (*See* Connelly Decl., ECF No. 269 at ¶16–20.)  Defendants also failed to

2  assign, convey and transfer to Plaintiff all of their rights, title and interests in Property or deposit

3  with Plaintiff an amount as determined sufficient to discharge any Loss.  Accordingly,

4  Defendants breached the Indemnity Agreement.

5         *4.    Losses*

6        Plaintiff has provided the Court with an accounting of its Loss.  (*See* Ex.6, Payment

7  History for Dunmore, ECF No. 269-1 at 40–46; Ex. 7, Listing of losses incurred by Travelers on

8  Bond Claims, ECF No. 269-1 at 47–51.)  In addition, Plaintiff has provided the Court with an

9  accounting of its paid legal fees associated with its surety of Defendant.  (*See* Ex. 8, Listing of

10  Payments Made by Travelers to Legal Representatives, ECF No. 269-1 at 52–53.)[5]  Thus, the

11  Court finds that Plaintiff have shown losses associated with Defendants' breach of the contract.

12        In opposing Plaintiff's motion, Defendants contend that summary judgment is not

13  appropriate because Plaintiff did not "reasonably" inquire into the claims made against the bonds

14  before paying them—thus breaching the implied covenant of good faith and fair dealing—and

15  failed to mitigate damages.  (ECF No. 306 at 5–12.)  Essentially, Defendants' defense and

16  counterclaim rest on Defendants' argument that Plaintiff breached the implied covenant of good

17  faith and fair dealing.  Defendants cite to *Arntz Contracting Co. v. St. Paul Fire & Marine Ins.*

18  *Co.*, 47 Cal. App. 4th 464 (1996), for the premise that a surety is not entitled to indemnification

19  for amounts paid in settlement of claims upon its bonds if the settlement in not made in good

20  faith.  (ECF No. 306 at 8.)  Defendants then try to manipulate this unavailing argument into the

21  conclusion that the reasonableness of Plaintiff's actions create a triable issue of material fact.

22  The Court is not impressed with this argument.

23       "'A breach of the implied covenant of good faith and fair dealing involves something

---

[4]  As previously referenced, Defendants contend that Mr. Connelly's declaration lacks personal knowledge and thus object to this fact.  However, Defendants at no time argue that Defendants made any effort to indemnify Plaintiff in accordance with the Indemnity Agreement.  Moreover, as referenced earlier in this Order, the Court has found that Mr. Connelly has personal knowledge of the facts within his declaration due to his employment for Plaintiff and thus has already DENIED Defendants' motion to strike Connelly's declaration.

[5]  Defendants dispute the Loss amount proffered by Plaintiff, but do not contend that Plaintiff did not in fact suffer Loss pursuant to its suretyship.  As such, the Court finds that Plaintiff did in fact suffer a Loss and will discuss the extent of such loss in the section of this Order dealing with Plaintiff's Specific Performance Claim.

1   beyond breach of the contractual duty itself ... and implies unfair dealing rather than mistaken

2   judgment.'" *Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*, No. 10CV2503 AJB

3   DHB, 2012 WL 5928139, at *6 (S.D. Cal. Nov. 26, 2012) [hereinafter *Highland P'ship, Inc.*]

4   (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990)). The

5   covenant of good faith finds specific application where one party is authorized with a

6   discretionary power affecting the rights of another. *Id.* (citing *Carma Dev., Inc. v. Marathon Dev.*

7   *Cal., Inc.*, 2 Cal. 4th 342, 372 (1992)). However, "the implied covenant will only be recognized

8   to further the contract's purpose; it will not be read into a contract to prohibit a party from doing

9   that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures &*

10  *Television*, 162 Cal. App. 4th 1107, 1120 (2008). As referenced above, the agreement states:

11  
12  
13  
14  
15  

> Company shall have **the right in its sole discretion**, to determine for itself and its indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and **its determination shall be final, binding and conclusive upon the Indemnitors**. **Company shall be entitled to immediate reimbursement for any and all Loss** incurred **under the belief it was necessary or expedient to make such payments**.

16  (Ex. 1, Dec. 15, 2005 General Agreement of Indemnity, ECF No. 269-1 at 2.) All parties to the

17  Indemnity Agreement are sophisticated business people, and the Court will not rewrite the

18  parties' contract after the fact to facilitate a different result. *See Certain Underwriters at Lloyd's*

19  *of London v. Super. Ct.*, 24 Cal. 4th 945, 968 (2001) ("[W]e do not rewrite any provision of any

20  contract, including the standard policy underlying any individual policy, for any purpose.");

21  *Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 75 (1997), *as modified on denial of*

22  *reh'g* (Mar. 11, 1998) ("We may not rewrite what they themselves [the parties] wrote."). The

23  implied covenant proffered by Defendants conflicts with the parties' explicit agreement. *See*

24  *Highland P'ship, Inc.*, 2012 WL 5928139, at *7 (interpreting the same contract provision and

25  refusing to import the defendant's reasonableness standard.)

26          As to Defendants' argument that the Court should follow the rationale put forth in *Arntz*,

27  *Arntz* is not applicable, as it is inapposite to the current factual scenario. In *Arntz*, the court was

28  considering whether a surety could be indemnified for settlement costs attributed to claims

1   alleging the surety's deliberate and willful misfeasance in managing the project, not the surety's

2   payment of settlement claims and bonds on behalf of the indemnitor as stated under the indemnity

3   agreement.  47 Cal. App. 4th 485.  Thus, when the *Arntz* court mentioned settlements "not made

4   in good faith," the court was referring to settlements involving the surety's own wrongdoing—not

5   settlements between the two contracting parties.  *Id.*; *see also Highland P'ship, Inc.*, 2012 WL

6   5928139, at *6 (finding *Arntz* inapplicable where no allegations of wrongfulness are brought

7   against the surety).  Therefore, Defendants' arguments concerning the reasonableness of the

8   payments that Plaintiff made on Defendants' behalf are irrelevant since the agreement gives sole

9   discretion to Plaintiff to determine for itself and its indemnitors how to proceed as to bond claims.

10  Thus, the Court finds that Plaintiff has met its burden as to its First Cause of Action for Breach of

11  Contract and grants its motion for summary judgment as to this claim.

12          B.      Specific Performance

13          Plaintiff seeks specific performance and asks that the Court order Defendants to comply

14  with the Collateral Provision of the Indemnity Agreement.  The Collateral Security Provision

15  states as follows:

16              Indemnitors agree to deposit with Company upon demand, an
                amount as determined by Company sufficient to discharge any Loss
17              or anticipated Loss. Indemnitors further agree to deposit with
                Company, upon demand, an amount equal to the value of any assets
18              or Contract funds improperly diverted by any Indemnitor.  Sums
                deposited with Company pursuant to this paragraph may be used by
19              Company to pay such claim or be held by Company as collateral
                security against any Loss or unpaid premium on any Bond.
20              Company shall have no duty to invest, or provide interest on, the
                deposit.  Indemnitors agree that Company would suffer irreparable
21              harm and would not have an adequate remedy at law if Indemnitors
                fail to comply with the provisions of this paragraph.
22

23

24  (Ex. 1, Dec. 15, 2005 General Agreement of Indemnity, ECF No. 269-1 at 3.)   Defendants

25  contend that Plaintiff's assumptions relative to the scope and costs of known Loss are grossly

26  overstated, factually inaccurate, and conflict with other allegations of these claims as set forth in

27  the Tax Refund Litigation.  (ECF No. 306 at 16.)   The Court has already ruled on Defendants'

28  argument as to the reasonableness of Plaintiff's payments and declines to address these arguments

1    further.  Thus, the following discussion concerns whether at this juncture specific performance of

2    the contract should be awarded.

3           Sureties are ordinarily entitled to specific performance of collateral security clauses.

4    *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984).  "If a creditor is to have the

5    security position for which he bargained, the promise to maintain the security must be specifically

6    enforced." *Id.*; *accord Milwaukie Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 966 (9th Cir.

7    1966).  The California courts follow this rule.  *See Safeco*, 739 F.3d at 433; *General Ins. Co. v.*

8    *Singleton*, 40 Cal. App. 3d 439, 442 (1974); *General Ins. Co. v. Howard Hampton Inc.*, 185 Cal.

9    App. 2d 426 (1960).

10          The Court agrees that in most situations specific performance of the collateral security

11   agreement would be appropriate.  However, due to the procedural posture of this case, the Court

12   finds it would be more prudent to award damages at this juncture.  The purpose of the collateral

13   security agreement is to provide the surety with funds which the surety is to hold in reserve once

14   a surety receives a demand on its bond.  *Safeco*, 739 F.2d at 433.  Thus, "if the claim on the bond

15   must be paid, then the surety will pay the loss from the indemnitor's funds; otherwise, the surety

16   must return the funds to the indemnitor." *Id.*

17          This case stems from bond payments that were made by Plaintiff on Defendants' behalf

18   starting in 2007.  That same year Plaintiff filed this case when Defendants did not comply with

19   Plaintiff's indemnification requests.  Seven years have elapsed since that time, during which

20   Plaintiff has allegedly made close to 267 payments on Defendants' behalf totaling $7,739,639.78

21   (*see* Ex. 6, Payment History for Dunmore, ECF No. 269-1) and incurred losses totaling

22   $14,850,982.43 (*see* Ex. 7, Listing of Losses Incurred by Travelers on Bond Claims, ECF No.

23   269-1 at 47).  These figures do not include the $3,566,917.34 allegedly spent in attorney fees (*see*

24   Ex. 8, Listing of payments made by Travelers to legal representatives, ECF No. 269-1 at 52) or

25   the $7,962.17 incurred travel costs (*see* Ex. 9, Travelers incurred employee travel costs, ECF No.

26   269-1 at 57).  All of these costs, if substantiated, would be recoverable by Plaintiff under the Loss

27   provision of the Indemnity Agreement.  (*See* Ex. 1, Dec. 15, 2005 General Agreement of

28   Indemnity, ECF No. 269-1 at 2.)   From the parties' briefing, the Court infers that most if not all

1    of the costs associated with the parties' contractual agreement have been realized and thus are no

2    longer anticipated costs.  Hence, the Court finds that it would be more appropriate to ascertain the

3    actual loss and award this amount instead of ordering specific performance of the collateral

4    security agreement at this time.

5            In reviewing the parties' submissions, the Court finds that there are material issues of fact

6    as to the Losses owed to Plaintiff.  For example, Defendants argue that Plaintiff has overstated its

7    potential losses by including both the full values of the payment and performance bonds for

8    particular projects.  (ECF No. 306 at 7.)  In support, they have submitted the Declaration of

9    Meredith Harvan (ECF No. 301) and Michael Lutz (ECF No. 300-1).  Plaintiff contends that both

10   declarations rely on old data and are thus inaccurate.  (Pl.'s Resp. to Defs' Additional Material

11   Facts, ECF No. 307-4 at ¶ 18.)  Defendants also contend that Plaintiff's calculation of damages

12   does not accurately reflect a payment that it received pursuant to a "Second Settlement"

13   concerning Dunmore's bankruptcy litigation.  (ECF No. 306 at 19–20.)  For these reasons, the

14   Court concludes that there are material questions of fact as to the amount of Losses owed to

15   Plaintiff.

16           C.      Repatriation

17           Because the Court is unable to determine the exact Losses owed to Plaintiff and declines

18   to order specific performance, the Court finds that repatriation would not be appropriate at this

19   time.  However, after the Court determines the appropriate Loss amount to be recovered, if

20   Defendants fail to pay such judgment, the Court is inclined to reconsider Plaintiff's arguments for

21   repatriation.

22           D.      Defendants' Counterclaim for Breach of Implied Covenant of Goof Faith and Fair

23                   Dealing

24           As discussed above in regards to Plaintiff's breach of contract claim,[6] the implied

25   covenant proffered by Defendants conflicts with the parties' explicit agreement.  *See Highland*

26   *P'ship, Inc.*, 2012 WL 5928139, at *7 (interpreting the same contract provision and refusing to

27   import the defendant's reasonableness standard.)  Accordingly, Defendants' counterclaim for

28   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [6]      *Infra* Section III(A).

1  breach of implied covenant of good faith and fair dealing fails, and Plaintiff is entitled to

2  summary judgment on this claim.

3  **IV.    CONCLUSION**

4  For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

5  Plaintiff's Motion for Summary Judgment (ECF No. 268).  Plaintiff's motion for summary

6  judgment as to Plaintiff's First Cause of Action for Breach of Contract is GRANTED.

7  Additionally, Plaintiff's motion for summary judgment as to Defendant's counterclaim for breach

8  of implied covenant of good faith and fair dealing is GRANTED.  Plaintiff's motion for specific

9  performance and repatriation are DENIED.  Pursuant to the Court's ruling, this case will continue

10  for the sole purpose of determining the amount of damages owed to Plaintiff.  Defendants are

11  cautioned to limit any future arguments to this issue.[7]  Furthermore, the parties are ordered to

12  meet and confer and file a joint statement within thirty (30) days of the entry of this order

13  addressing whether they would be amenable to attending a settlement conference.

14  IT IS SO ORDERED.

15  Dated:  December 3, 2014

16

17

18  _____

19  Troy L. Nunley
    United States District Judge

20

21

22

23

24

25

26  [7]      To the extent that future briefing concerns other litigation between the parties, the parties are to fully brief the Court as to how such awards, settlement, etc. affect the Losses at issue.  For example, the limited briefing provided in Defendant's opposition concerning previous bankruptcy settlement agreements and their effect, if any, on the current litigation was not presented in an intelligible manner.  The Court cautions the parties that any future briefing that does not contain a factual explanation and instead relies on legal conclusions will not be given consideration.

27

28